their source, as well as expiration dates, both of which are printed on each bottle. (I must say, the bottles are very attractive and distinctive.)

Among other distribution outlets, Kitu sells Super Coffee through the Amazon Marketplace. To do that, a seller has to receive an "Amazon Standard Identification Number," or an "ASIN" for the product. However, the ASIN is not peculiar to the seller; rather, it is peculiar to the product. Thus, if multiple sellers are selling the same product on Amazon, all of them will have the same ASIN.

Not to cast any aspersions on Amazon, which undoubtedly has very good reasons for doing things this way, but the assignment of a product number rather than a seller number opens the marketplace up to mischief. Unauthorized sellers can obtain counterfeit, defective, damaged, returned, expired, or otherwise defective products and just post them on Amazon under the genuine product's ASIN. It can be very hard, or impossible, for a consumer to tell if he is buying the genuine product or a defective knockoff. Moreover, when customer reviews of the product come in, they do not have to differentiate between the seller – just the product. So the sale of defective or counterfeit products drawing negative reviews under the same ASIN as the genuine article effectively disparage the genuine article as well.

In September 2023, Kitu, which had theretofore done very well in customer reviews, noticed an uptick in negative reviews. Kitu has shown me a number of these reviews, complaining about lack of an expiration date, non-original product packaging, improper seals, late orders, shipping the wrong product, and other defects and alterations. Kitu found 350 of these reviews. The timing of the negative reviews correlated with plaintiff BH Super Deals, Inc. having started selling Super Coffee on Amazon.

Kitu did some test buys, and sure enough, the product BH was selling was counterfeit. The expiration dates had been rubbed out with alcohol on the bottles so that buyers would not know they were buying expired product. The lot numbers were similarly removed so that Kitu could not trace where its distribution chain had gone awry (although, as explained below, it seems likely that BH obtained the product in the liquidation market, where Kitu had sold some product that was approaching the last few months of its expiration date).[1] The packaging in which BH was selling Super Coffee showed that someone had taken off the original packaging and repackaged it before shipping.

Kitu therefore approached Amazon and requested that Amazon block further sales of products from BH's site. Amazon agreed. Kitu also sent five cease and desist letters to BH in September and October of 2023, receiving no response.

Instead, in a demonstration of unmitigated gall, BH commenced this lawsuit in November 2023. Its complaint alleged tortious interference based upon Kitu's "false" claims to Amazon that BH was selling counterfeit product. Notably, BH never served its complaint; perhaps it merely wanted to file it to show Amazon that it was attempting to protect its position. In any event, Kitu somehow found out about the suit and quickly answered. At the same time, it asserted a counterclaim under the Lanham Act for (1) trademark counterfeiting (15 U.S.C. §§ 1114, 1127); (2) unfair competition (15 U.S.C. § 1125(a)(1)(A)); and (3) false advertising ((15 U.S.C. §§ 1114, 1125(a)(1)(B)).

Three weeks later, BH fired its attorney. I granted the attorney's motion to withdraw, conditioned on him providing BH with notice that as a corporation, it had to appear through new

---

[1] Kitu made these sales to stores like Dollar Tree and Big Lots, which have business models requiring quick turnaround of products.

3

counsel in this case, and if it did not, its complaint would be stricken. BH never did appear through counsel, and never answered Kitu's counterclaim. I dismissed the complaint, and the Clerk entered BH's default on the counterclaim. It has not responded to Kitu's motion for a default judgment.

## DISCUSSION

It is hornbook law that on a motion for default judgment, the well-pleaded allegations of the complaint pertaining to liability are accepted as true. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). A defendant's default does not constitute an admission as to the damages claimed in the complaint. See Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009). The burden is on the plaintiff to establish, by a reasonable certainty, an entitlement to the relief requested. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, 973 F.2d at 158. To determine damages, the court may conduct an inquest, see Fed. R. Civ. P. 55(b)(2), or it may rely upon the affidavits and other documentary evidence provided by the plaintiff, obviating the need for a hearing on damages, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

There is no question that BH's liability under each of Kitu's three claims for relief in its counterclaim have been satisfactorily established by the pleading itself. As to trademark counterfeiting, Kitu has shown that it owns the mark and that BH is using an identical or virtually indistinguishable mark for the same product. And because these are the same product, likelihood of confusion and willfulness are presumed. The test for unfair competition is the same.

As to false advertising, the complaint shows that BH falsely promoted Super Coffee as the genuine article; that this misrepresentation was material; and that it did or was likely to cause damage to plaintiff.

That leaves us with the appropriate remedies. There is no need for an inquest here. Kitu has submitted extensive documentation supporting the remedies it seeks.

For monetary damages, Kitu has requested either actual or, alternatively, statutory damages.

As to actual damages, Kitu has shown that once it sold some product in the liquidation market in June 2023, which is where BH probably got it, its sales declined substantially from September through November. It has also established satisfactorily that it lost $1.04 million to various unauthorized sellers on Amazon, including BB. Of that $1.04 million, it has a plausible basis for establishing that at least $237,116.27 went to BB between August and November. It is also a firm number that Kitu's subscribers declined from 7400 subscribers in 2022 to 2400 subscribers in 2023.

Kitu estimates that its lost revenue is due to the negative reviews on Amazon and bad product experience of consumers who bought from BH. Based on the negative reviews and its loss of subscribers, Kitu expects sales to be down $600,000 in 2024.

Thus, with the $237,116.27 already lost in the anticipated loss of $600,000 future damages in 2024, Kitu seeks damages of $837,116.27. It would treble those damages under 15 U.S.C. § 1117(b)(1), since BH's conduct was undoubtedly not only willful, but, as shown by its actions with regard to this lawsuit, brazen, for a total of $2,511,348.81.

I am not convinced as to actual damages. It is too much for me to conclude that *all* of Kitu's lost sales are attributable to BH's unauthorized sales. There is no allowance for other

5

competitive factors in this market, or other infringers who may also have contributed to the decline. (For example, although telling me that it had 7400 subscribers in 2022, Kitu has not told me how many it had in prior years.) It seems to me that the frequent inability to measure the impact of an infringer's sales is the reason why Congress allowed the alternative of not-insubstantial statutory damages.

Here, I have no difficulty in accepting Kitu's request for $1 million in statutory damages. As noted, the infringement is entirely willful; the product alteration makes it worse; the lost revenue to Kitu, although difficult to quantify precisely, is substantial; and the selling of an expired food product exposed consumers to unknown damages.

In addition to damages, Kitu seeks permanent injunctive relief. It is self-evident that it meets the familiar three-factor test for such relief, *i.e.*, irreparable harm; balance of hardships; and protection of the public interest. See generally Patsy's Italian Restaurant, Inc. v. Banas, 658 F.3d 254, 272-73 (2d Cir. 2011).

Finally, Kitu seeks recovery of the reasonable attorneys' fees and costs incurred in prosecuting its counterclaim. It may submit an appropriate motion as provided in Fed. R. Civ. P. 54(d).

## CONCLUSION

Kitu's motion for a default judgment is granted to the extent set forth above. Kitu is

directed to submit a proposed FINAL JUDGMENT AND PERMANENT INJUNCTION within 7 days of the docketing of this Order.[2]

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
      April 22, 2024

---

[2] Kitu's brief references that it has already submitted a proposed judgment, but I can't find it.

7